UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

IONUT BITERE, *et al.*,

Defendants.

Case No. 2:18-cr-00001-MMD-CWH

ORDER

## I.    SUMMARY

Defendants Ionut Bitere, Eugeniv-Florian Ciuca, and Oana Maria Serban were indicted on various counts related to an alleged Automated Teller Machine ("ATM") skimming operation that Defendants carried out in the Las Vegas, Nevada area. Generally speaking, ATM skimming is a practice where ATM card information is gathered from unsuspecting bank customers through the use of small cameras and electronic magnetic strip recorders installed on ATMs—and then cash is withdrawn in those unsuspecting customers' names. Defendants Ciuca and Serban moved to suppress certain pieces of evidence and statements (ECF Nos. 95, 96, 140), and Serban moved to join ("Serban's Joinder") a supplement to part of one of Ciuca's motions to suppress (ECF No. 170). These motions were referred to Magistrate Judge Carl W. Hoffman. Judge Hoffman held a hearing on the motions to suppress (the "Hearing").[1] (ECF No. 157.) Currently before the Court are Judge Hoffman's reports and recommendations ("R&R(s)") on these motions to suppress (ECF Nos. 186, 187), along with Ciuca and Serban's

---

[1]Judge Hoffman admitted several exhibits into evidence at the Hearing. (ECF No. 157.)

objections thereto (ECF Nos. 202, 203, 204).[2] Judge Hoffman denied Serban's Joinder and recommends denying the motions to suppress. (ECF Nos. 186, 187.) For the reasons discussed below, the Court will accept Judge Hoffman's recommendations, and Ciuca and Serban's motions to suppress evidence will accordingly be denied. The Court also affirms Judge Hoffman's decision to deny Serban's Joinder.

## II.      LEGAL STANDARD

Magistrate judges have authority to review and file findings and recommendations on matters referred by the district court, including motions to suppress evidence in a criminal case. LR IB 1-4(h). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court thus accepts the portions of Judge Hoffman's R&Rs to which Ciuca does not object and conducts a *de novo* review of the portions of the R&Rs to which either Ciuca or Serban objects.

With respect to Judge Hoffman's decision on Serban's Joinder, magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); L.R. IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown

_____

[2]The Court also reviewed the government's responses to Defendants' objections. (ECF Nos. 209, 210, 212.) In addition, the Court granted Ciuca's request for leave to file a reply in support of his objection (ECF No. 213). (ECF No. 217.) Accordingly, the Court also reviewed Ciuca's reply. (ECF No. 220.) In addition, the government filed a response to Ciuca's request for leave to file a reply (ECF No. 214), which the Court also reviewed. The Court also reviewed the exhibits attached to all of the parties' briefing cited in this order.

that the magistrate judge's ruling is clearly erroneous or contrary to law."). A magistrate judge's pretrial order issued under 28 U.S.C. § 636(b)(1)(A) is not subject to *de novo* review, and the reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). Thus, the Court reviews Judge Hoffman's denial of Serban's Joinder under a clear error standard of review.

## III.    BACKGROUND

The Court relies on documents filed by the parties in support of their motions and related briefs, as well as the testimony from the Hearing, to construct this factual background. The Court notes any inconsistencies that may be material to its factual findings below.

### A.    Relevant Events

The government alleges that all three Defendants entered the United States from Romania in September 2017 and embarked on an ATM-skimming spree over the course of fall 2017 that brought them from the Chicago, Illinois area to Las Vegas, Nevada, where they were apprehended. (ECF No. 212 at 2.) Following a report from a security manager at One Nevada Credit Union that the bank had found an ATM skimmer on one of its ATMs in Las Vegas, Detective M. Jogodka of the Las Vegas Metropolitan Police Department ("LVMPD") began investigating who placed the ATM skimmer. (ECF No. 212-3 at 2.) It was December 3, 2017. (*Id.*) The security manager provided Detective Jogodka with some photographs of the suspect who placed the skimmer and other information about the impacts of the ATM skimmer on December 4, 2017. (*Id.*) The suspect was driving a red Saturn sedan with an upside-down Illinois license plate. (*Id.* at 2-3.)

Detective Jogodka enlisted the help of officials at various other government agencies to learn who placed the ATM skimmer. He was also working on this ATM skimming case as part of a larger team of investigators. Through collaboration with this larger team, Detective Jogodka found out the red Saturn was registered to Mavromatis

3

Fotis. (*Id.* at 3.) Detective Jogodka also determined that a Mavromatis Fotis had rented a room at the Budget Suites on Tropicana Avenue in Las Vegas. (*Id.*) Then, Detective Jogodka got records from the Budget Suites that included copies of the passports of the people who had rented that room; Fotis from Greece and Serban, from Romania. (*Id.*; *see also* ECF No. 214-2.) The Budget Suites records also noted that Fotis and Serban's vehicle was a 2005 Volkswagen Tiguan. (*Id.*) But the photographs of Mavromatis Fotis on the photocopy of the Greek passport from the Budget Suites did not match other records for Mavromatis Fotis. (ECF No. 214-4.) Customs and immigration officials matched the photograph of Mavromatis Fotis from the Greek passport with other photographs in their records, and determined that 'Mavromatis Fotis' was actually Ciuca, also from Romania. (ECF No. 212-3 at 3-4.) They communicated this information to Detective Jogodka.

Investigators saw the red Saturn in the parking lot of the Excalibur Hotel-Casino at 10:40 a.m. on December 5, 2017. (*Id.* at 6.) Investigators reached out to the security staff at the Excalibur and were able to use surveillance video footage to follow the man who got out of the red Saturn (who looked like the man in the photographs from the bank) all the way to room 25-217. (*Id.*) Excalibur records revealed that room 25-217 was registered to Bitere. (*Id.* at 6-7.) Excalibur records further revealed that room 16-240 was registered to Ciuca; Bitere made the reservation for him. (*Id.*)

Other investigators continued to stake out the Budget Suites. Around 11:30 a.m., Serban and Bitere showed up in the Tiguan at the office of the Budget Suites, seeking the deposit for the room rented to Mavromatis Fotis and Serban. (*Id.* at 7.) Bitere was still wearing the same outfit he was wearing in the surveillance footage from the bank and the Excalibur. (*Id.*) Bitere and Serban retrieved the deposit. (*Id.*) Then they got back in the Tiguan and left. (*Id.*) Investigators tailed them to a Money Tree cash transfer business. Investigators arrested both Bitere and Serban as they stood at the counter of the Money Tree attempting to transfer $1000 to Romania; a phone laying on the counter displayed

instructions on where to wire the money. (*Id.*) The investigators detained Bitere but let Serban go.

Meanwhile, other investigators were working with the security staff at the Excalibur. As relevant to the pending motions, Detective Jogodka appears to have been mostly directing the operations at the Excalibur, and his primary collaborator from Excalibur security was Alan Whitty. (ECF No. 212-1 at 2.) As explained and analyzed in more detail below, over the course of the afternoon of December 5, 2018, investigators got Ciuca to leave his room at the Excalibur, handcuffed him, and detained him in an Excalibur security office. (*Id.*) Detective Jogodka also got a telephonic search warrant from a Nevada state judge to search both Ciuca's room (room number 16-240), and Bitere's room (room number 25-217), along with the red Saturn in the parking lot (the "Excalibur Warrant"). (ECF No. 212-3.) Just before Detective Jogodka was going to execute the search warrant on Ciuca's room, Serban showed up at the Excalibur. (ECF No. 212-1 at 2-3.) Investigators detained her and took her to the Excalibur security office where they were also holding Ciuca. (*Id.* at 3.) Jogodka executed the Excalibur Warrant later that afternoon, searching both hotel rooms and the red Saturn. Investigators found more than $40,000 in cash, ATM-skimming-related equipment, handwritten lists that appeared to consist of debit card numbers, electronics, and clothes in the two Excalibur hotel rooms and the red Saturn. (ECF No. 204-1 at 193-194.) Later in the afternoon of December 5, 2017, investigators took Ciuca and Serban to join Bitere at the Clark County jail. (ECF No. 212-1 at 3.)

As their investigation continued, investigators obtained several additional warrants to access various electronic devices and online accounts that appeared to be controlled by the three Defendants. (ECF No. 210 at 3.) One of those warrants was for a Yahoo! email account, Edelyn_marya@yahoo.com, which appeared to be controlled by Serban (the "Yahoo Warrant"). (ECF No. 210-1.)

///

**B. The Challenged Warrants**

Serban challenges the sufficiency of the Yahoo Warrant, arguing it was not supported by probable cause. (ECF No. 203.) Ciuca challenges the sufficiency of the Excalibur Warrant, also arguing it was not supported by probable cause. (ECF No. 204.) In both cases, Defendants argue that the affidavits submitted in support of the applications for these search warrants contained insufficient factual material to support a probable cause finding. In other words, Ciuca and Serban contend that the judges who issued the Excalibur Warrant and the Yahoo Warrant made the wrong call.

**C. The Alleged Warrantless Searches of Excalibur Hotel Room 16-240**

As noted above, Ciuca was staying in room 16-240 of the Excalibur at the time investigators arrived in the late morning or early afternoon of December 5, 2017. (ECF No. 212-1 at 2.) Later that afternoon, Detective Jogodka executed the Excalibur Warrant he obtained on room 16-240. (*Id.* at 3.) Detective Jogodka found evidence that potentially shows Ciuca and Serban, who was also staying in the room, were engaged in an ATM-skimming scheme. (*Id.*) Ciuca aims to suppress any and all evidence collected by investigators in Room 16-240. (ECF No. 204.) In addition to challenging the sufficiency of the Excalibur Warrant that permitted the search, Ciuca also argues that any evidence found in room 16-240 should be suppressed because some or all of it was collected during two alleged warrantless searches conducted before Detective Jogodka got a warrant to search room 16-240. (*Id.*) More specifically, Ciuca argues that one warrantless search occurred at the time investigators came to his room and placed him in handcuffs (*Id.* at 3-8.), and another occurred between 2:08 and around 2:30 p.m. (*Id.* at 8-11.) The Court describes both alleged warrantless searches in more detail below.

**1. The Alleged Warrantless Search at the Time Ciuca Was Arrested**

At either 12:39 or 12:43 p.m. on December 5, 2017, Whitty knocked on the door to room 16-240. (*Compare* ECF No. 212-1 at 2 *with* ECF No. 204-1 at 192.) Ciuca opened it. (ECF No. 212-1 at 2.) Investigators handcuffed Ciuca and took him down to the

Excalibur's security office. (*Id.*) However, Ciuca says that investigators handcuffed him inside the room, then made him stand there for a few minutes while investigators searched his room, and picked up a phone and his wallet from a night stand. (ECF No. 204 at 4-6.) This, Ciuca argues, was a warrantless search that yielded at least the phone and the wallet from the nightstand. (*Id.* at 6.) The government responds that the phone and wallet were found on Ciuca's person, not elsewhere in the room, and that no warrantless search of room 16-240 occurred at the time investigators handcuffed Ciuca. (ECF No. 212 at 6-14.)

### 2. The Alleged Warrantless Search at 2:08 p.m.

Ciuca further argues that a second warrantless search of room 16-240 occurred around 2:08 p.m. on December 5, 2017. (ECF No. 204 at 8-11.) As support, Ciuca points to internal records from the Excalibur, specifically something called the Lock Interrogation Report ("LIR"), which consists of automated records showing when the door of room 16-240 was opened and closed. (*Id.* at 9-10.) To show the interaction between the LIR and other evidence before the Court, the Court has constructed the timeline below. It shows the events of December 5, 2017 as relevant to room 16-240 and the pertinent activities within the Excalibur Hotel more generally.[3] The timeline does not include all the entries in the LIR. (ECF No. 204-1 at 196-209.)

| Time | Event | Source |
|------|-------|--------|
| 8:38 a.m. | The door to room 16-240 is opened from the outside by Eugeniu Florian [Ciuca]. | LIR (ECF No 204-1 at 199.) |
| 9:17 a.m. | The door to room 16-240 is opened from the outside by Eugeniu Florian [Ciuca]. | LIR (ECF No 204-1 at 199.) |

---

[3]Key to color coding in the timeline table. Orange = Lock Interrogation Report (ECF No. 204-1 at 196-209). Black = Excalibur Incident Report ("EIR") (ECF Nos. 212-1, 204-1 at 143-175). Blue = LVMPD Arrest Report completed by Detective Jogodka (ECF No. 204-1 at 190-194). Green = Hearing Transcript (ECF No. 204-1 at 1-141). Yellow = LVMPD Property Report (ECF No. 212-2). Light Blue = LVMPD Application for Telephonic Search Warrant, Event # LLV171205000525 (ECF No. 212-3).

| Time | Event | Source |
|------|-------|--------|
| 12:04-05 p.m. | The door to room 16-240 is opened from the inside and then closed. | LIR (ECF No 204-1 at 198.) |
| 12:18 p.m. | Jogodka contacts Excalibur security for help investigating ATM skimmers. Excalibur Security Officer Alan Whitty primarily helps him. | EIR (ECF No. 212-1 at 2; 204-1 at 144.) |
| 12:34 p.m. | Readout done (obtaining door opening records) for door to room 16-240. | LIR (ECF No. 204-1 at 198.) |
| 12:39 p.m. | Whitty knocks on door of room 16-240, Ciuca opens door, someone (or several people) from LVMPD enter(s) and handcuff(s) Ciuca. | EIR (ECF No. 212-1 at 2; 204-1 at 144.) |
| 12:43 p.m. | Jogodka writes in his arrest report that "contact was made with" Ciuca, and Ciuca was told he had to stay out of his room 16-240 until LVMPD could execute the search warrant. | LVMPD Arrest Report (ECF No. 204-1 at 192.) |
| 12:49 p.m. | Whitty knocks on door of room 27-215 (registered to Bitere) and enters the room when nobody responds. | EIR (ECF No. 212-1 at 2; 204-1 at 144.) |
| 12:49 p.m. | Security officers escorting Ciuca arrive at Excalibur security office (on first floor) with Ciuca. | Hearing Transcript (ECF No. 204-1 at 12-14.) |
| 12:50 p.m. | Security officers escorting Ciuca arrive at Excalibur security office (on first floor) with Ciuca. | EIR (ECF No. 212-1 at 2; 204-1 at 144.) |
| 2:08 p.m. | The door to room 16-240 is opened with a staff card (Alan Whitty) after initial failed reading, door is then closed. | LIR (ECF No. 204-1 at 197-8.) |
| 2:13 p.m. | The door to room 16-240 opened from the inside, and then left open. | LIR (ECF No. 204-1 at 197.) |
| 2:13-2:30 p.m. | Jogodka gets search warrant for both hotel rooms and the Saturn from state court judge over the phone. Jogodka sworn in and starts call at 2:13 p.m. Judge grants warrant, and warrant is witnessed at 2:30 p.m. | EIR (ECF No. 212-1 at 2; 204-1 at 144); LVMPD Application for Telephonic Search Warrant, Event # LLV171205000525 (ECF No. 212-3.) |
| Approx. 2:30 p.m. | Serban returns to Excalibur after having been detained but then released by LVMPD at Money Tree with Bitere, where Bitere was arrested. | EIR (ECF No. 212-1 at 2-3; 204-1 at 144-145.) |
| Approx. 2:37 p.m. | Jogodka executes search warrant on room 16-240. | LVMPD Arrest Report (ECF No. 204-1 at 193.) |
| 2:45 pm. | The door to room 16-240 is closed, opened from the inside, and then closed again. | LIR (ECF No. 204-1 at 197.) |
| 2:47 p.m. | Jogodka executes search warrant on room 16-240 according to EIR. | EIR (ECF No. 212-1 at 3; 204-1 at 145.) |
| 2:47 p.m. | Jogodka executes search warrant on room 16-240 according to metadata in photos presented at hearing, which Jogodka testified he took at the time he entered the room; the photos and metadata were admitted into evidence at the hearing. | Hearing Transcript (ECF No. 204-1 at 77-82.) |

| Time | Event | Source |
|---|---|---|
| 2:58 p.m. | Room 16-240 opened with staff card (Ring 23 Security) after initial failed reading. | LIR (ECF No. 204-1 at 197.) |
| 3 p.m. | Time listed in LVMPD property report for the collection of the items taken from the Money Tree, the two hotel rooms, the VW Tiguan, and the Saturn. | LVMPD Property Report (ECF No. 212-2.) |
| 3:12pm | Security officers escorting Serban arrive at Casino Security Office – Two. | EIR (ECF No. 212-1 at 3; 204-1 at 145.) |
| 3:14pm | LVMPD officers take Serban from Casino Security Office – Two for transport to Clark County Detention. | EIR (ECF No. 212-1 at 3; 204-1 at 145.) |
| 3:27pm | LVMPD executes warrant and searches room 25-217 (registered to Bitere). | EIR (ECF No. 212-1 at 3; 204-1 at 145.) |
| 3:28pm | LVMPD executes warrant and searches room 25-217 (registered to Bitere). | LVMPD Arrest Report (ECF No. 204-1 at 193.) |
| 3:30pm | Security officers dispatched to help LVMPD escort Ciuca from Casino Security Office - One to Clark County detention. | EIR (ECF No. 212-1 at 3; 204-1 at 145.) |
| 3:30pm | Security officers assigned to inventory items not seized by LVMPD in the two rooms conduct that inventory, take items to lost and found. | EIR (ECF No. 212-1 at 3, 5; 204-1 at 145, 147.) |
| 3:47pm | Jogodka and team execute search warrant on red Saturn. | EIR (ECF No. 212-1 at 3; 204-1 at 145); *see also* LVMPD Arrest Report (ECF No. 204-1 at 193.) |

### D.    Procedural Background

Ciuca filed two motions to suppress evidence collected against him in this case: one to suppress statements he made to LVMPD Detective Garrett, while sitting with him in the Excalibur security office for several hours on the afternoon of December 5, 2017 (ECF No. 96); and the other to suppress evidence collected pursuant to the Excalibur Warrant (ECF No. 95). Judge Hoffman recommended denying Ciuca's motion to suppress statements (ECF No. 96) in one of his R&Rs (ECF No. 186 at 9-11), and Ciuca does not object to that finding by Judge Hoffman (ECF No. 104 at 1). Thus, the Court adopts Judge Hoffman's recommendation and will deny Ciuca's motion to suppress statements (ECF No. 96).

Judge Hoffman also denied Ciuca's motion to suppress evidence (ECF No. 95), where Ciuca argued, as outlined above and further discussed below, that the Excalibur Warrant was not supported by probable cause, and that two warrantless searches of

9

Excalibur room 16-240 occurred before Detective Jogodka obtained the Excalibur Warrant. (ECF No. 186 at 2-9 (denying Ciuca's motion to suppress).) Judge Hoffman had also permitted Serban to join Ciuca's motion to suppress. (ECF Nos. 101, 117.) Ciuca objected to Judge Hoffman's denial of his motion to suppress evidence. (ECF No. 204.) Ciuca also requested a hearing on the Excalibur Warrant pursuant to *Franks v. Delaware*, 438 U.S 154 (1978) in his objection. (*Id.* at 14.) Serban also joined, albeit in a conclusory fashion, Ciuca's objection. (ECF No. 202 at 2.) Thus, while the Court agrees with Judge Hoffman and will accept his recommendation to deny Ciuca's motion to suppress evidence (ECF No. 95) in his R&R (ECF No. 186), the Court has conducted a *de novo* review of the record and explains its reasoning in more detail below.

Further, after the Hearing, Ciuca filed a motion to supplement (ECF No. 168) his earlier motion to suppress statements (ECF No. 96), relying on the security video of Ciuca's temporary detention in the Excalibur's security room to suppress additional statements. Serban moved to join that motion (ECF No. 163), although she had not moved to join Ciuca's original motion to suppress statements. (ECF No. 186 at 11.) Judge Hoffman granted both motions and directed Ciuca to include specific citations to the time stamp on the security video to support the additional statements that Ciuca seeks to suppress. (ECF No. 165 at 2.) Ciuca then filed the supplement of his motion to suppress statements ("the Supplement") (ECF No. 168); and Serban filed her Joinder (ECF No. 170). Judge Hoffman denied Serban's Joinder. (ECF No. 186. at 11-12.) Serban objects to Judge Hoffman's denial of her Joinder. (ECF No. 202.) Thus, the Court will also address Serban's objection in more detail below.

Finally, Serban moved to suppress any evidence seized from the edelyn_marya@yahoo.com email account pursuant to the Yahoo Warrant. (ECF No. 140.) There, she argued that the Yahoo Warrant was not supported by sufficient probable cause. (*Id.*) Judge Hoffman recommends denying her motion. (ECF No. 187.) Serban

objects to that denial.[4] (ECF No. 203.) Thus, while the Court also agrees with Judge Hoffman that the Yahoo Warrant was supported by sufficient probable cause, it has conducted a *de novo* review of the record and will explain its decision to adopt Judge Hoffman's R&R (ECF No. 187) in more detail below.

## IV.   DISCUSSION

Having conducted a *de novo* review of the record pertinent to the portions of Judge Hoffman's R&Rs that Ciuca and Serban object to, the Court will adopt Judge Hoffman's recommendations for the reasons provided below. The Court's analysis is organized by issue.

### A.   The Challenged Warrants

In their objections to the R&Rs, Ciuca argues that the Excalibur Warrant was not supported by probable cause (ECF No. 204 at 11-13), and Serban argues that the Yahoo warrant was not supported by probable cause (ECF No. 203). The government responds that the affidavits submitted in support of the applications for both warrants contained ample facts from which the issuing Judges reasonably found that Excalibur room 16-240 and the edelyn_marya@yahoo.com email account were likely to contain evidence of an ATM skimming scheme—and thus both warrants were supported by probable cause. (ECF Nos. 210 at 6-12, 212 at 21-28.) The Court agrees with the government.

"Probable cause to search exists when the known facts and circumstances are sufficient to cause a reasonable person to conclude that contraband or evidence of a crime will be found." *United States v. Ibarra*, 345 F.3d 711, 716 (9th Cir. 2003) (citation omitted). There must be a "'fair probability' that contraband or evidence is located in a

---

[4]Serban originally requested an evidentiary hearing in her motion to suppress (ECF No. 140), which Judge Hoffman denied (ECF No. 187 at 5-6). In her objection to Judge Hoffman's R&R denying her motion to suppress, Serban withdrew her request for an evidentiary hearing on whether the Yahoo Warrant was sufficiently supported by probable cause. (ECF No. 203 at 7.) Thus, Serban's request for an evidentiary hearing on the Yahoo Warrant is now moot.

particular place." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 246 (1983)). The "fair probability" inquiry is a "'commonsense, practical question'" that is based on the totality of the circumstances, including reasonable inferences. *Id.* (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)).

When examining a challenged search warrant, a judge's probable cause determination is accorded "significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and will be overturned only if it is "clearly erroneous," *United States v. Stanert*, 762 F.2d 775, 779 (9th Cir. 1985). In making this determination, the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Id.* at 778. The duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39 (internal quotations omitted).

The Court addresses each of the two challenged warrants, in turn, below.

### 1. The Excalibur Warrant

The Court finds that the Excalibur Warrant was supported by probable cause. Thus, it will overrule Ciuca and Serban's objections and accept Judge Hoffman's recommendation with respect to the Excalibur Warrant, denying the applicable motion to suppress.

Detective Jogodka spent seventeen minutes on the phone with Nevada state Judge Diana Sullivan to obtain the Excalibur Warrant, a conversation corresponding to an eleven page affidavit when transcribed. (ECF No. 212-3.) As transcribed, Detective Jogodka's conversation with Judge Sullivan contained sufficient facts such that she reasonably could have concluded there was a fair probability that contraband or evidence would be found in room 16-240 of the Excalibur. At the least, Judge Sullivan's decision to issue the Excalibur Warrant was not clearly erroneous.

In his oral affidavit, Detective Jogodka explained that he had determined Ciuca was the registered owner of the red Saturn that had been captured facilitating ATM skimming on surveillance footage of an ATM in which Detective Jogodka had also found an ATM skimmer. (*Id.* at 2-3.) Further, Detective Jogodka explained that Ciuca had registered the red Saturn using the fake identity of Mavromatis Fotis. (*Id.* at 2-4.) Thus, it was reasonable that Detective Jogodka was looking for Ciuca—he appeared to be connected to the ATM skimming, and the fact that he registered the car used for the ATM skimming to a fake identity raises an additional red flag suggesting that Ciuca was up to something.

Detective Jogodka also offered Judge Sullivan sufficient facts connecting Ciuca to room 16-240 at the Excalibur, and explained why he suspected that evidence related to, and/or the fruits from, the ATM skimming scheme may be in that hotel room. Detective Jogodka explained that the ATM skimmers who were using the red Saturn—a car registered to Ciuca—likely had made off with $28,000 from One Nevada Credit Union alone. (*Id.* at 4.) He further explained that other investigators had located the red Saturn in the parking lot of the Excalibur earlier that morning. (*Id.* at 6.) He also explained that he collaborated with hotel security to learn, by piecing together surveillance footage, that the person driving the red Saturn was staying in the Excalibur room 25-217. (*Id.*) A search of the Excalibur's records revealed that Ciuca also had a room at the Excalibur—room 16-240—and that room had been rented for Ciuca by the person who got out of the red Saturn, who turned out to be Bitere. (*Id.* at 6-9.) Thus, it was reasonable for Judge Sullivan to conclude that Ciuca was somehow involved with this suspected ATM-skimming scheme, and that cash, ATM skimming devices, or other evidence may be in room 16-240 of the Excalibur. In addition, the affidavit contained other facts not specifically discussed here, which arguably add further support for Judge Sullivan's probable cause finding.

The Court therefore finds Judge Sullivan was not clearly erroneous in granting the Excalibur Warrant, and overrules Ciuca and Serban's objections to Judge Hoffman's R&R with respect to the Excalibur Warrant.

### 2. The Yahoo Warrant

The Court also finds that the Yahoo Warrant was supported by probable cause. Thus, it will overrule Serban's objection and accept Judge Hoffman's recommendation with respect to the Yahoo Warrant, denying the applicable motion to suppress.[5]

The 37 page affidavit submitted by FBI Special Agent Buel in support of his application for the Yahoo Warrant contained sufficient facts such that Judge Hoffman reasonably could have concluded there was a fair probability that evidence relevant to the ATM-skimming-scheme at issue here would be found somewhere in the content of the applicable email account. (ECF No. 210-1.) At the least, Judge Hoffman was not clearly erroneous in signing the warrant.

From the factual information contained in the affidavit submitted in support of the application for the Yahoo Warrant, it was reasonable for Judge Hoffman to conclude both that Serban was involved in the ATM-skimming scheme, and more evidence related to it would likely be found in the email account that was the subject of the Yahoo Warrant. (*Id.*) Agent Buel begins by explaining his relevant experience and training, the crimes he is investigating, and the reasons for his general knowledge that people engaged in ATM-skimming often used shared access to online accounts to carry out ATM-skimming schemes. (*Id.* at 1-14.) He then explains why investigators believed that Serban was an active participant in the ATM-skimming operation at issue here, including that Serban was registered as staying in the same room at the Budget Suites as Mavromatis Fotis (Ciuca's

---

[5]The Court notes that Judge Hoffman both signed the Yahoo Warrant and issued the applicable R&R. Thus, the Court refers to Judge Hoffman throughout this section IV.A.2.

fake identity, who was also the registered owner of the red Saturn seen in ATM surveillance videos) (*Id.* at 16), Serban went back to collect the deposit from the Budget Suites with Bitere and was then detained at a Money Tree with a fair amount of cash on her (*Id.* at 18), and another $5000 cash was found in her luggage in her room at the Excalibur (and the room also contained other indicia of ATM-skimming) (*Id.* at 18-19).

Agent Buel next explains how he determined from Bitere's phone[6] that Bitere was communicating with Ciuca about the ATM skimming using WhatsApp, and they were sharing an email account—which tends to show this was a method that the alleged co-conspirators used. (*Id.* at 22-30.) He then explains why he thinks that Bitere was also communicating in a similar fashion with Serban, and why he suspects they are sharing information about their ATM-skimming operation in the Yahoo! email account that is the subject of the Yahoo Warrant. (*Id.* at 30-25.) The Court finds that all of these facts, as presented in the applicable affidavit, add up to a reasonable probability that evidence regarding the ATM skimming scheme would be found in this email account.

The Court therefore finds Judge Hoffman was not clearly erroneous in granting the Yahoo Warrant and overrules Serban's objection to Judge Hoffman's R&R with respect to the Yahoo Warrant.

### B. Whether Any Warrantless Searches of Excalibur Hotel Room 16-240 Occurred

Ciuca further argues that any evidence found in Excalibur Hotel room 16-240 should be suppressed because two warrantless searches of that hotel room occurred before the room was search by a team led by Detective Jogodka pursuant to the Excalibur Warrant. (ECF No. 204 at 3-11.) The government responds that the Court should adopt Judge Hoffman's recommendation that neither search occurred, because the evidence

---

[6]Agent Buel had access to this phone pursuant to a previously-issued warrant. (ECF No. 220-1 at 22.)

does not support Ciuca's argument that either search occurred. (ECF No. 212 at 6-19.) For the reasons explained below, the Court agrees with the government. The Court will address each of the two alleged searches separately.

### 1. The Alleged Search When Ciuca Was Arrested

Ciuca argues that a warrantless search of room 16-240 occurred somewhere between 12:39 and 12:50 p.m. on December 5, 2017, right after he was handcuffed by investigators, after he opened the door to that hotel room in response to a knock from Excalibur security officer Whitty. (ECF No. 204 at 3-8.) Ciuca says that right after he was handcuffed, LVMPD Detective Garret and other investigators took a look around room 16-240, picked up some cash from an open suitcase, commented on the cash, and picked up one of Ciuca's phones and his wallet from a nightstand. (*Id.* at 3.) As evidence this happened, Ciuca points to surveillance video from the Excalibur's security office (on a different floor of the hotel), where Detective Garret can be seen with the phone and wallet he allegedly took from Ciuca's room in his hands. (*Id.* at 3-4.) Ciuca further points to some unclear testimony from Detective Garret and Whitty as evidence that a warrantless search occurred. (*Id.* at 4-6.)

The government responds that Detective Garret took the phone and wallet off Ciuca's person, as part of a pat-down search incident to arrest. (ECF No. 212 at 10-12.) More generally, the government argues that no warrantless search of room 16-240 occurred around the time Ciuca was handcuffed. (*Id.* at 6-14.) The Court agrees with the government because the evidence favors the government's argument.

The government proffers several persuasive pieces of evidence in support of its argument that no warrantless search of room 16-240 occurred around the time Ciuca was handcuffed—which the Court finds determinative in finding no such search occurred. First, the government presented three witnesses at the Hearing—Detectives Jogodka and Garret, and Excalibur security officer Whitty—and all three testified that no warrantless searches of room 16-240 occurred. (*Id.* at 6.) Second, the EIR does not present the clear

16

chronology that Ciuca relies on to argue a search occurred and therefore does not support his argument. (ECF No. 212-1 at 2.) Third, the LVMPD Property Report presumably completed by Detective Jogodka soon after the relevant events of December 5, 2017 states that the items Ciuca relies on to show a warrantless search occurred were found on Ciuca's person. (ECF No. 212-2.) Fourth, Detective Garret testified at the Hearing that he took those items—a phone and Ciuca's wallet—from Ciuca's person. (ECF No. 212 at 11.) Fifth, Ciuca neither presented an affidavit nor testified at the Hearing regarding his version of what happened around the time he was handcuffed, leaving the government's more persuasive evidence unrebutted. (*Id.* at 9-10.)

In sum, the Court finds the pertinent evidence shows that no search occurred around the time Ciuca was handcuffed in the early afternoon of December 5, 2017. Thus, the Court will accept Judge Hoffman's recommendation on this point and deny Ciuca and Serban's related motions.

## 2. The Alleged Search at 2:08 p.m.

Ciuca also argues that a warrantless search of Excalibur Hotel room 16-240 occurred sometime between 2:08 and 2:30 p.m. on December 5, 2017. (ECF No. 204 at 8-11.) His primary piece of evidence is the LIR, which shows that Excalibur security officer Whitty opened the door to Room 16-240 at 2:08 p.m. (*Id.* at 9; *see also* Table, *supra* Section III.C.2.) The LIR further shows that the door to room 16-240 was opened from the inside at 2:13 p.m., and then left open until 2:45 p.m. (Table, *supra* Section III.C.2.) Ciuca explains that, conceivably, Detective Jogodka could have been walking around in the room from 2:08 to 2:13 p.m., when he went out in the hall to call Judge Sullivan to get the Excalibur Warrant. (ECF No. 204 at 10.) Ciuca further points to some of Whitty's testimony, and takes issue with some of Judge Hoffman's reasoning in the applicable R&R, where Judge Hoffman found the LIR to be unreliable. (*Id.* at 9-10.) The government responds that the rest of the evidence presented on this point shows that the LIR was

unreliable, and therefore Judge Hoffman was correct to discredit it. (ECF No. 212 at 15-19.)

The Court finds that Judge Hoffman got the right result—the LIR is unreliable, and thus there is no evidence that a warrantless search of room 16-240 occurred sometime after 2:08 p.m. First, the LIR shows that the door to room 16-240 remained closed from 12:05 p.m. until 2:08 p.m. But there is no genuine dispute that Ciuca was taken out of the room in handcuffs during that time, in part because the undisputed surveillance footage from the Excalibur security office shows Ciuca being escorted in at 12:50 p.m. (ECF No. 212 at 19.) The door to room 16-240 must have been opened for that to happen. Thus, the LIR was inaccurate at least once during the afternoon of December 5, 2017. And while Ciuca argues that the 'read-out' shown in the LIR at 12:34 p.m. is consistent with investigators arriving shortly after that to handcuff Ciuca, Ciuca does not—and cannot—argue that the LIR shows the door to room 16-240 was opened when it was indisputably opened: when Ciuca was taken out of it and handcuffed. Second, as noted above, Detectives Jogodka and Garret, and Excalibur security officer Whitty, all testified that no warrantless search occurred. (ECF No. 212 at 6.) Third, both Detective Jogodka and Whitty testified that, in their experience, LIRs are generally unreliable. (*Id.* at 17-19.) Fourth, the government presented photographs with corresponding metadata that tended to show room 16-240 was undisturbed at 2:47 p.m., and that no warrantless search occurred before that time. (*Id.* at 15-17.) And while Ciuca raises a cursory challenge to the accuracy of the photos and their metadata in his briefing (ECF No. 204 at 10), he raised no such challenge at the Hearing when such evidence was introduced. (ECF No. 212 at 15-17.)

Further, why would Detective Jogodka conduct a warrantless search of room 16-240 just after 2:08 p.m.? Ciuca does not need to answer that question, but the logical answer is that Detective Jogodka had no need to. He had already identified the room and secured it. He was already preparing to get a search warrant to search the room. (ECF

18

No. 204-1 at 72-75.) None of the information he presented in support of his application for the search warrant referenced the contents of the room—and the Court agrees the affidavit contained enough factual information to support a probable cause finding. (ECF No. 212-3; *see also supra* Section IV.A.1.) And Ciuca has not even alleged that Detective Jogodka took anything from the room during this alleged warrantless search, so it is not entirely clear what Ciuca is trying to suppress. (ECF No. 204) Overall, in addition to the evidence favoring the finding that the LIR was unreliable and no warrantless search occurred just after 2:08 p.m., it makes little sense that such a search would have occurred.

On these facts, the Court agrees with Judge Hoffman that the LIR was unreliable, and the government offered evidence showing that no warrantless search of room 16-240 occurred sometime after 2:08 p.m. The Court accepts Judge Hoffman's recommendation and overrules Ciuca and Serban's corresponding objections.

### C.     Serban's Joinder and Objection to Judge Hoffman's Denial

Serban's Joinder and objection must be viewed in connection with Judge Hoffman's recommendations as to Ciuca's filings.[7] Judge Hoffman recommended that Ciuca's motion to suppress (ECF No. 96) and Ciuca's Supplement (ECF No. 168) be denied for two reasons. First, Judge Hoffman found the motion and Supplement to be moot with respect to all but Ciuca's statement as to "bank fraud" because the government indicated it would not seek to introduce the other statements as part of its case in chief. (ECF No. 186 at 9.) Second, Judge Hoffman found that the absence of *Miranda*[8] warnings

---

[7]The procedural posture of Serban's objection is odd because Ciuca did not object to Judge Hoffman's denial of his underlying motion—and Serban was attempting to join a supplement to that motion. Nevertheless, the Court will address the merits of Serban's objection.

[8]The Supreme Court established in *Miranda v. Arizona* that law enforcement officers must provide warnings to individuals who are in custody in order to combat the inherently compelling pressures of custodial interrogation. 384 U.S. 436, 467 (1966).

did not violate Ciuca's Fifth Amendment rights to support suppression of Ciuca's "bank fraud" statement because Ciuca was not subject to interrogation when he volunteered the statement. (*Id.* at 11.) Ciuca did not object to Judge Hoffman's recommendations. Accordingly, the Court adopts Judge Hoffman's recommendations and denies Ciuca's motion to suppress his statements (ECF No. 96).[9]

Judge Hoffman denied Serban's Joinder based on her failure to provide "points and authorities to support the joinder, and [for raising] arguments regarding prejudice for the for the first time on reply." (ECF No. 186 at 12.) Serban's objection (ECF No. 202) reiterates her claim of prejudice raised in her reply in support of her Joinder (ECF No. 170). Serban cannot and does not argue that the government obtained Ciuca's statements in violation her constitutional rights. Serban instead argues that she is seeking "exclusion-relief [] because of the prejudicial impact of [Ciuca's] statements if admitted."[10] Serban does not elucidate on this point in her objection any more than she did in her reply to her Joinder. In any event, Serban's arguments—as best the Court can discern—are tenuous. First, she seeks "exclusion-relief" but asked to join essentially in a motion to suppress, not exclude, Ciuca's statement. Second, she cites to Rule 14(a) of the Federal Rules of Criminal Procedure and Rule 403 of the Federal Rules of Evidence, but fails to provide any analysis under either rule—both of which go to admissibility, not suppression. Rule 14(a) permits the court to order separate trials or "provide any other relief that justice requires" if joinder of multiple defendants "appears to prejudice a defendant or the

---

[9]Moreover, the Court agrees with Judge Hoffman that Ciuca's "bank fraud" statement was volunteered during the course of casual conversation with Detective Garrett, which did not amount to interrogation to trigger the safeguards included in *Miranda* warnings.

[10]Serban's objection references Ciuca's statements, but the only statement as issue is Ciuca's "bank fraud" statement since that is the statement the government seeks to introduce as part of its case in chief. The Court therefore will only address Serban's objection as it relates to that statement.

government." Fed. R. Crim. P. 14(a). Serban appears to suggest that the "other relief that justice requires" is to exclude Ciuca's statement. However, whether admitting Ciuca's statement of "bank fraud" would present the potential of unfair prejudice to Serban to warrant any relief under Rule 14 or even Rule 403 are matters that Serban can raise at trial and the Court can better address in the context of trial. Accordingly, the Court agrees with Judge Hoffman's decision to deny Serban's Joinder.

### D. Ciuca's Request for a Franks Hearing

Finally, Ciuca notes in passing towards the conclusion of his objection to the applicable R&R that he requests a hearing under *Franks v. Delaware*, 438 U.S 154 (1978) to challenge the Excalibur Warrant. (ECF No. 204 at 14.) Ciuca also argued in his reply filed in support of one of his objections that the affidavit filed to obtain the Excalibur Warrant contained certain false statements. (ECF No. 220 at 2-3.) In *Franks*, the Supreme Court established a two-prong test for overturning a judicial officer's probable cause finding. First, there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S at 171. Second, a defendant is entitled to an evidentiary hearing on the validity of the affidavit only if he can make a "substantial showing" that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and; (2) the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. *Id.* at 171-172.

The Ninth Circuit has articulated five requirements that a defendant must satisfy to warrant a *Franks* hearing: "(1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause." *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (quoting *United States v. Dicesare*, 765 F.2d 890, 894-95 (9th Cir. 1985)). In other words, a defendant

21

must show that the affidavit could not support a finding of probable cause even if it were purged of its falsities and/or supplemented by the omissions. *See Stanert*, 762 F.2d at 780-81.

Here, the Court finds that a *Franks* hearing is not warranted because Ciuca has not even alleged or argued that Detective Jogodka included any intentionally false statements in the affidavit he filed to obtain the Excalibur Warrant. While some of the statements in that affidavit may have turned out to be false, Ciuca does not even argue that Detective Jogodka's statements were false at the time he made them. Nor has he alleged or argued that Detective Jogodka omitted anything from the affidavit. Further, Ciuca has not offered any proof to support his request for a *Franks* hearing. Thus, a *Franks* hearing is simply unnecessary with respect to the Excalibur Warrant.

In sum, the Court agrees with Judge Hoffman's recommendations, and adopts them as the findings of this Court.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendants' motions.

It is therefore ordered that Judge Hoffman's recommendations (ECF Nos. 186, 187) are adopted and the Court overrules Ciuca and Serban's objections.

It is further ordered that Ciuca's motion to suppress evidence (ECF No. 95) and motion to suppress statements (ECF No. 96) are denied.

It is further ordered that Serban's objection to Judge Hoffman's decision to deny her motion to join Ciuca's supplement to his motion to suppress statements (ECF No. 170) is overruled.

It is further ordered that Serban's motion to suppress evidence (ECF No. 140) is denied.

22

DATED this 13th day of November 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE